UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CSX TRANSPORTATION, INC.,

        Plaintiff,

                                    Case No. 15-11575

v.

                                    Paul D. Borman
                                    United States District Judge

CRAIG S. BENORE, ET AL.,

        Defendants.

_____/

## OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS AS TO COUNTS I AND III (ECF NO. 10); (2) GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S SUR-REPLY (ECF NO. 24); (3) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY (ECF NO. 25); AND (4) GRANTING PLAINTIFF'S MOTION TO AMEND AS TO COUNT II (ECF NO. 20)

Plaintiff CSX Transportation, Inc. ("Plaintiff") filed its complaint against Defendants Craig S. Benore, Dorothy J. Benore, Larry Benore & Son Farms & Trucking[1], Mark A. LaPointe, and Westfield Insurance Company ("Defendants") on May 1, 2015 based on complete diversity between the parties.  (ECF No. 1, Compl.).  On May 26, 2015, Defendants filed the current motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 10).  Plaintiff filed a response on July 10, 2015 pursuant to a stipulated order allowing an extension of time.  (ECF Nos. 15, 16).  Then, on July 24, 2015, Defendants filed their reply.  (ECF No. 17).

A hearing on the motion to dismiss was held on September 2, 2015. Shortly thereafter, on September 11, 2015, Plaintiff filed a Motion for Leave to Amend its Complaint.  (ECF No. 20).

---

[1] Plaintiff's claims against Craig Benore and Dorothy Benore are against them individually and also doing business as Larry Benore & Son Farms & Trucking.  (*See* Compl. at 1).

Defendants filed a response on September 25, 2015 (ECF No. 21), and Plaintiff then filed a reply (ECF No. 22).

On October 21, 2015, Defendants filed a Sur-Reply to Plaintiff's Motion to Amend and Supplemental Brief in support of the Response to the Motion to Dismiss (ECF No. 23). Thereafter, on October 23, 2015, Plaintiff filed a Motion to Strike the Sur-Reply (ECF No. 24).

On November 4, 2015, Defendants filed a "Motion to File a Sur-Reply and Supplemental brief and Response to in opposition to CSX's Motion to Strike" and "acknowledg[ed]that their Sur-Reply/Supplemental brief should have been accompanied by a motion seeking this Court's leave to file." (ECF No. 25, at 1). On November 17, 2015, Plaintiff filed a "Response in Opposition to Defendants' Combined Motion to File Sur-Reply/Supplemental Brief and Response in Opposition to CSX's Motion to Strike" which incorporated the arguments it previously set forth in its Motion to Strike. (ECF No. 26).

For the following reasons, the Court will grant Defendants' motion to dismiss as to Counts I and III. The Court will also grant Plaintiff's motion to amend Count II such that the only remaining claim in this action is Count II against Defendants Mark LaPointe, Craig S. Benore, Dorothy J. Benore, and Larry Benore & Son Farms & Trucking. Additionally, the Court will grant Plaintiff's motion to strike Defendants' sur-reply and deny Defendants' motion for leave to file a sur-reply.

## I. BACKGROUND

Plaintiff alleges that on November 24, 2013, Defendant Mark A. LaPointe ("LaPointe") was operating a tractor trailer truck belonging to Defendant Larry Benore & Son Farms & Trucking ("LBSFT"). (Compl. at ¶¶ 17-18). Defendants Craig Benore and Dorothy Benore are

the sole registered owners of the defendant business LBSFT.  (*Id*. at ¶¶ 6-7).

On November 24, 2013, Plaintiff's train, identified as Q15024, was traveling northbound on CSX's right-of-way in Monroe County, Michigan.  (*Id*. at ¶15).  While train Q15024 was approaching the intersection of County Road 151 (also identified as Lakeside Road and Luna Pier Road) and the railroad tracks, a different train was stopped on the southbound tracks within that same crossing.  (*Id*. at ¶16).  Meanwhile, LaPointe was approaching the railroad crossing at County Road 151 from the west.  (*Id*. at ¶17).  LaPointe then drove his tractor trailer truck around activated railroad signals, gates, and published warnings at the above mentioned crossing and into the direct path of train Q15024 as it traveled northbound and caused Q15024 to collide with the passenger side of Defendant LBSFT's tractor trailer truck.  (*Id*. at ¶¶19-20).

Because of the impact, the load of kernel corn being hauled by Defendant LaPoint then spilled over Plaintiff's right-of-way and Plaintiff's roadway, signals, trains, and rail cars all sustained damage.  (*Id*. at ¶ 21).  Additionally, Plaintiff alleges it suffered damages because of the delay costs associated with the accident.  (Compl. at ¶ 22).  Plaintiff claims it has sustained damages in the amount of $147,064.96.  (*Id*. at ¶ 24).  Plaintiff asserts that "[d]espite repeated demands, [Defendants] have not paid the amount owed to CSX for the damage sustained" from the accident.  (*Id*. at ¶¶  25, 64).

Plaintiff's original complaint sets forth claims of negligence and gross negligence against Defendants LBSFT, Craig and Dorothy Benore, and LaPointe.  (*Id*. at ¶¶ 26-55).  In the alternative, Plaintiff also sets forth a claim against Defendant Westfield Insurance Company ("Westfield") pursuant to the Michigan No-Fault Insurance Act, MICH. COMP. LAWS § 500.3101 *et seq*., (the "Act").  (*Id*. at ¶¶ 56-66).  Plaintiff alleges that it presented its claim for damages by

3

invoice to Defendant Westfield on September 12, 2014 within the applicable one-year statute of limitations.  (*Id.* at ¶¶ 57-58).  Plaintiff claims that Defendant Westfield is liable for the property damage caused to Plaintiff because Defendant Westfield is Defendants Craig and Dorothy Benore, LBSFT, and LaPointe's insurer.  (*Id.* at ¶ 60).  At some point in time, Defendant Westfield sent a payment to Plaintiff in the amount of $91,813.90 but then cancelled the payment.  (Compl. at ¶¶ 61, 63).  Plaintiff asserts that Defendant Westfield has never paid the amount owed for the property damages it sustained.  (*Id.* at ¶ 64).

Plaintiff also now seeks to amend its claim of "gross negligence" to make clear this claim encompasses "intentionally caused damage."  (Pl.'s Br., Ex. A, Proposed Amended Complaint, at ¶¶ 42-53).  More specifically, Plaintiff alleges that LaPointe was acting in the scope and course of his employment when he "deliberately ignored the signals, gates, and warnings posted at the Crossing when he drove LBSFT Truck onto the CSX right-of-way."  (*Id.* at ¶ 43).  Further, Plaintiff claims that LaPointe "intended to cause the collision between LBSFT Truck and the Northbound Train and the resulting damage sustained by CSX."  (*Id.* ¶ 44).  Plaintiff does not seek to amend Counts I and III of his original complaint.

## II. STANDARDS OF REVIEW

FED. R. CIV. P. 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d

4

433, 446 (6th Cir. 2000)).  "[L]egal conclusions masquerading as factual allegations will not

suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

The Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do.  Factual allegations must be enough to raise a right

to relief above the speculative level...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal citations omitted).  Dismissal is only appropriate if the plaintiff has failed to

offer sufficient factual allegations that make the asserted claim plausible on its face.  *Id.* at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) the Supreme Court clarified the concept of

"plausibility" stating:

> To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to "state a claim to relief that is plausible on its face."
> [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has
> facial plausibility when the plaintiff pleads factual content that allows the court to
> draw the reasonable inference that the defendant is liable for the misconduct
> alleged. *Id*. at 556. The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a defendant has
> acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent
> with" a defendant's liability, it "stops short of the line between possibility and
> plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id*. at 678.  A plaintiff's factual allegations, while "assumed to be true, must do more than create

speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to

relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555-

556).  Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential

allegations respecting all the material elements to sustain recovery under some viable legal

theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 562).

5

Federal Rule of Civil Procedure 15(a) states that leave to amend is "freely" granted "when justice so requires".  FED. R. CIV. P. 15(a).  However, the Court need not give leave to amend when the proposed amendment would be futile, result in undue delay, or is brought in bad faith.  *See Murphy v. Grenier*, 406 Fed. App'x 972, 977 (6th Cir. 2011).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).

## III. ANALYSIS

### A.    Motion to Dismiss the Original Complaint

Defendants argue that Plaintiff's claims for negligence and gross negligence against the defendants Craig and Dorothy Benore, Mark LaPointe and LBSFT must be dismissed because tort liability for property damage caused by the use of an insured motor vehicle has been abolished in Michigan pursuant to the compulsory No-Fault Insurance Act, MICH. COMP. LAWS § 500.3101 *et seq*., (the "Act").  Accordingly, Defendants argue that the only claim properly asserted is against Defendant Westfield pursuant to the Act.  Defendants also assert that Plaintiff's claim pursuant to the Act fails because Plaintiff failed to file this lawsuit within the one year statute of limitations.

Plaintiff argues that (1) the Act does not apply because it is preempted by federal law, specifically the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101, *et seq*. and the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101, *et seq*., or in the alterative, (2) if the Act does apply, then its claim against Defendant Westfield is not barred because Defendant Westfield waived the statute of limitations.

1.      Michigan's No-Fault Insurance Act

The Act was enacted in Michigan in 1973 and was "an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system." *Shavers v. Kelley*, 402 Mich. 554, 578 (1978).  The Act "provides benefits to victims of motor vehicle accidents without regard to 'fault' (as a substitution for tort remedies which, are in part, abolished)." *Id*. at 579.  Accordingly, "[t]he no-fault act ... abrogates tort liability arising from the use, ownership, or maintenance of motor vehicles except under specified circumstances." *Travelers Ins. v. U-Haul of Mich., Inc*., 235 Mich. App. 273, 275; 597 N.W.2d 235, 237 (1999).  Tort liability does, however, survive in narrow instances, for example when there is a death, serious impairment of body function, or permanent serious disfigurement.  MICH. COMP. LAWS § 500.3135(1), (3).

Tort liability as to property damage is similarly abrogated by the Act when it "aris[es] out of the ownership, operation, maintenance, or use of a motor vehicle".  MICH. COMP. LAWS § 500.3121(1); *see also* MICH. COMP. LAWS § 500.3121(2) (providing "[p]roperty protection insurance benefits are due under the conditions of this chapter without regard to fault.").  Under the Act, "[a] no-fault insurer is required to pay property protection insurance benefits for damage to tangible personal property." *State Farm Fire and Cas. Co. v. Old Republic Ins. Co.*, 234 Mich. App. 465, 467; 595 N.W.2d 149 (1999) (citing MICH. COMP. LAWS § 500.3121).  Property damage is defined in the Act as "tangible property consist[ing] of physical injury to or destruction of the property and loss of use of the property so injured or destroyed."  MICH. COMP. LAWS § 500.3121(3).

2.      Federal Preemption

Under Michigan law, in "an action in which the plaintiff seeks property protection benefits arising out of the ownership, maintenance, or use of a motor vehicle the insurer, and not the insured, is the proper party defendant to the action." *Matti Awdish, Inc. v. Williams*, 117 Mich. App. 270, 275; 323 N.W.2d 666, 669 (1982).  Plaintiff does not dispute this fact, and acknowledges that the application of the Act would "preclude CSX from maintaining an action against" the Benores, LaPointe and LBSFT.  (Pl.'s Resp. at 10).  Plaintiff argues its claims against Craig and Dorothy Benore, Mark LaPointe and LBSFT are proper because the Act is preempted by federal law, specifically the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101, *et seq*. and the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101, *et seq*.

"Where a state statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993) (citing U.S. Const., Art. VI, cl. 2).  However, "a presumption against federal preemption is embodied in the saving clauses of 49 U.S.C. § 20106." *CSX Transp. Inc. v. City of Plymouth*, 283 F.3d 812, 816 (6th Cir. 2002) (examining the preemptive effect of the FRSA).  Therefore, "preemption will lie only if the federal regulations *substantially subsume* the subject matter of the relevant state law." *Id*. (emphasis in original).

A state statute may conflict with federal law in three different ways.  *Schafer v. Schafer* (*In re Schafer*), 689 F.3d 601, 613 (6th Cir. 2012).  First, "express preemption" applies when Congress's intent to preempt state law is explicit.  *Id*. at 613-14 (citation omitted).  "Where a federal statute contains no express statement regarding preemption, the intent to preempt state

law may be inferred if an actual conflict exists between federal and state law [known as "conflict preemption"] or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it [known as "field preemption"]." *R.J. Corman R.R. Co. v. Palmore*, 999 F.2d 149, (6th Cir. 1993) (internal marks and citation omitted); *see also In re Schafer*, 689 F.3d at 613. In the present action, Plaintiff argues that the Act is expressly preempted by FRSA and ICCTA and also preempted by field preemption.

FRSA was enacted in 1970 "to 'promote safety in every area of railroad operations and reduce railroad-related accidents and incidents.'" *CSX Transp. Inc. v. City of Plymouth*, 283 F.3d 812, 815 (6th Cir. 2002) (quoting 49 U.S.C. § 20101). The statute allocates the power to "prescribe regulations and issue orders for every area of railroad safety supplementing laws and regulations in effect on October 16, 1970" to the Secretary of Transportation. *Id*. (citing 49 U.S.C. § 20103(a)). FRSA also includes an express preemption provision such that:

> The FRSA [] permits state regulation related to railroad safety only if: (1) the secretary of Transportation has not yet regulated the subject matter of the state regulation (the first savings clause); or (2) the regulation (a) is necessary to eliminate an essentially local hazard, (b) does not conflict with federal law, and (c) does not unreasonably burden interstate commerce (the second savings clause).

*CSX Transp*., 283 F.3d at 815 (summarizing 49 U.S.C. § 20106). Accordingly, if either of the savings clauses applies to the Act then the Act would not be preempted. *Id*. at 816-17 (analyzing whether Michigan statute that prohibited trains from blocking grade crossings for more than five minutes subject to two exceptions was preempted under FRSA and holding that it was because neither savings clause applied.).

9

Plaintiff contends that the first savings clause in FRSA does not apply to the Act because "federal laws and regulations already substantially subsume the subject matter of adequate safety at railroad grade crossings when the warning devices were installed using federal funds." (Pl.'s Resp. at 9). Plaintiff goes on to reason that "the warning devices employed at the crossing the [LaPointe] truck drove around, and a key component in the collision with CSX's train, were installed with the participation of federal funds" and accordingly because the Act would preclude an action against the Benores, LaPointe or LBSFT the Act "directly effects the safety of grade crossings." (*Id.* at 10). In sum, Plaintiff appears to be arguing that FRSA has regulated the same subject matter as the Act because its application to this action would affect the safety of grade crossings.

Plaintiff's argument is flawed. The FRSA makes clear that "[l]aws, regulations, and orders <u>related to railroad safety</u> and laws, regulations, and orders <u>related to railroad security</u> shall be nationally uniform to the extent possible." 49 U.S.C. § 20106(1) (emphasis added). Plaintiff has wholly failed to specify any FRSA regulation that addresses or even implicates the subject matter of the Act. Indeed, the Act provides "a cause of action against owners of motor vehicles arising from the negligent operation of those vehicles by authorized users." *Travelers Ins.*, 235 Mich. App. at 275. The Act does not speak to the same subject matter of the FRSA. *See Kuntz v. Illinois Central R. Co.*, 469 F. Supp. 2d 586, (S.D. Ill. 2007) (finding no field preemption based on negligence claims against a railroad to allow removal based on federal jurisdiction and explaining "FRSA manifests no intent to completely federalize the field of state tort law with respect to railroads."). Clearly, the Act does not contemplate, let alone regulate, railroad operations or safety but rather clearly regulates the legal remedies available for victims of *motor*

10

*vehicle* accidents.  Plaintiff has not pointed to any similar regulation in FRSA that speaks to tort remedies or recoveries for property damage.  In fact, while Plaintiff argues that the Act is federally preempted, it has only pled Michigan common law claims against Defendants LaPointe, LBSFT, and the Benores, rather than a federal statute or law.

Plaintiff attempts to connect the "safety of grade crossings" to the underlying facts in this action but such a connection is without any reasonable basis.  Unlike actions in which the plaintiff's tort claims against a railroad involved claims of inadequate warning lights at grade crossings or excessive train speeds; the present action involves no similar allegations.  *See Easterwood*, 507 U.S. at 661, 670-71 (holding that plaintiff's state law negligence claims based excessive train speed were preempted but claims based on failure to maintain adequate warning devices at the train crossing were preempted only to the extent that federal funds were used in the installation of warning devices.).  In fact, in this action Plaintiff asserts that the warning lights and barricades worked at the time of the accident and LaPointe disregarded them and drove around them immediately prior to the accident.  (Compl. at ¶¶ 19-20).  Accordingly, the negligence claims asserted in this action (against the driver of a motor vehicle for failing to obey a warning signal) do not implicate the adequacy of warning devices or the safety of train crossings in general.

Additionally, the Court notes that there are a number of cases in the United States Court of Appeals for the Sixth Circuit and in Michigan state courts in which the Act has been applied without discussion to situations analogous to the present case.  *See Norfolk & Western Ry. Co. v. Auto Club Ins. Ass'n.*, 894 F.2d 838 (6th Cir. 1990) (defendant drove his automobile into the side of a moving train, Railway brought a claim for property protection benefits against his no-fault

11

insurer, pertinent issue before the court was whether equitable tolling could apply to the statute of limitations.); *see also Mich. N. Ry. Co. v. Auto-Owners Ins. Co.*, 176 Mich. App. 706, 711-13; 440 N.W.2d 108 (1989) (where the road commission allegedly plowed the train crossing and left a pile of dirt on the tracks over which a train traveled and derailed, the plaintiff railway company sued the no-fault insurance carrier and the lower court ruled that plaintiffs were entitled to property protection benefits as a matter of law, but the appellate court held that the accident did not arise out of the "ownership, operation, maintenance or use of a motor vehicle as a motor vehicle" because it was "not the operation of defendant's vehicle that caused the accident, but the residual effect of the act of plowing or grading the road."); *State Farm Mut. Auto. Ins. Co. v. Soo Line R.R. Co.*, 106 Mich. App. 138; 307 N.W.2d 434 (1981) (regarding whether no-fault insurance company could seek reimbursement of PIP benefits paid to woman hit by a train while driving her car after she settled a separate negligence action against the railway and road commission.).

Moreover, Plaintiff's reliance on *Chesapeake & O. Ry. Co. v. Tanton*, 496 F. Supp. 877 (E.D. Mich. 1980), *aff'd sub nom. Chesapeake & O. Ry. Co. v. St. Paul Fire and Marine Ins. Co.*, 701 F.2d 573 (6th Cir. 1983) is misplaced. In *Chesapeake*, similar to the present action, the claims arose out of a collision between a truck and train. The plaintiff railway brought an action against the driver, its owner, and their insurer (St. Paul) for property damages pursuant to Michigan's No-Fault Act. *Chesapeake*, 496 F. Supp. at 878. The defendant insurer, St. Paul, argued that the railway was precluded from recovering for damages under the Act under the exclusion for "[v]ehicles and their contents... operated or designed for operation upon a public highway....". *Id*. at 888-89 (citing MICH. COMP. LAWS § 500.3121(1)(a)). The defendant St.

12

Paul argued that a train constituted a "vehicle" that could be operated upon a public highway and therefore was excluded. *Id*. The district court rejected such a construction and held that the plaintiff railway was not precluded from recovering property protection insurance benefits under the Act and granted the plaintiff's motion for summary judgment on liability under the same. *Id*. at 880.

The district court in *Chesapeake* also observed that "it is difficult to perceive how the state legislature could include trains within the meaning of the term 'vehicle' as used in the Michigan No-Fault Insurance Act even if it had so intended as the law regarding the liability of railroads in such cases may very well be pre-empted by federal law." *Id*. Based on this observation, Plaintiff now argues that the Act is likely preempted by federal law. However, reading the entirety of the opinion makes clear that the district court actually *applied* the Act to an analogous circumstance and the Sixth Circuit affirmed the same. *See Chesapeake & O. Ry. Co. v. St. Paul Fire and Marine Ins. Co.*, 701 F.2d at 574-75 (finding that a train is not a "vehicle" within the meaning of MICH. COMP. LAWS § 500.3123(1)(a) and affirming the district court's opinion).

Given all these facts, and most decidedly the lack of any connection between the subject matter of a FRSA regulation and the property protection benefits and remedies under the Act, the Court finds that the Secretary of Transportation has not yet regulated the subject matter of legal remedies arising from the "ownership, operation, maintenance or use of a motor vehicle" and the first savings clause under FRSA applies to the Act. Ergo, there is no preemption. Additionally, because the first savings clause applies to the Act the Court declines to address whether the second savings clause would also apply to the Act.

13

Plaintiff, however, also asserts in a conclusory manner that the Act is expressly preempted by the ICCTA.  The ICCTA also includes an express preemption provision which states that its jurisdiction over

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, entirely in one State,
>
> is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).  Plaintiff argues that this provision indicates that the ICCTA preempts state law "regulating the economic and operational components of the railroad industry."  (Pl.'s Resp. at 11).

Plaintiff's argument again fails to set forth any logical connection between the ICCTA and the subject matter of the Act.  Rather, Plaintiff relies upon cases in which courts have found that the ICCTA "expresses a clear intention to preempt state and local regulation of railroad operations."  *Canadian Nat. Ry. Co. v. City of Des Plaines*, No. 1-04-2479, 2006 WL 345095, *3 (App. Ct. Ill., Feb. 10, 2006) (collecting cases).  However, there is nothing in the Act that speaks to, or is relevant to, the regulation of railroad operations.  Indeed, there is nothing in the Act that implicates any of the areas of exclusive jurisdiction set forth in the ICCTA's preemption provision.

Plaintiff's conclusory statement that "[t]he abolishment of tort liability and imposition of an inflexible statute of limitations which may elapse even if negotiations are commenced with

14

the insurer adversely effects the operations and economics of interstate rail carriers" is also without any support or explanation. The mere fact that a railroad owner's claim now lies with an insurer rather than the operator or owner of a vehicle, or that a railroad owner may face a shorter or inflexible statute of limitations for their claim of property damage under the Act, does not somehow transform the Act into a statute that regulates rail transportation. This argument is without merit.

Finally, Plaintiff argues that even if the Act is not expressly preempted under FRSA or the ICCTA, the Act is still subject to "field preemption" because of Congress's intent to govern the railroad industry on a national level. Plaintiff then contends that the Act has a "regulating effect on interstate rail operations that is at odds with the clear Congressional intent to have rail operations governed on a federal level." (Pl.'s Resp. at 13).

Again, Plaintiff's argument lacks relevance to the subject matter of the Act. It is true that the Sixth Circuit has recognized that "Congress has undertaken the regulation of almost all aspects of the railroad industry, including rates, safety, labor relations, and worker conditions" which speaks to "Congress's general intent that railroads should be regulated primarily on a national level through an integrated network of federal law," *Palmore*, 999 F.2d at 152. Here, there is nothing to indicate that it is Congress's intent to regulate the state law remedies or tort claims available to a railroad with respect to property damage arising from the ownership, operation, maintenance or use of a motor vehicle. *See Kuntz*, 469 F. Supp. 2d at 592 ("FRSA manifests no intent to completely federalize the field of state tort law with respect to railroads."). Additionally, despite Plaintiff's statements to the contrary, there is no law or case law indicating that the application of Michigan's No-Fault Insurance Act would impose a "heightened duty"

15

upon a railway regarding the safety of its grade crossings - especially in this action where the adequacy of the grade crossings is not implicated in Plaintiff's allegations.

For all these reasons, the Court finds that Plaintiff has not overcome the presumption that there is no preemption, express or otherwise. Accordingly, the Court finds that the Act applies and Defendants' motion to dismiss the negligence claim, Count I, must be granted because tort liability for the alleged property damage has been abolished pursuant to the Act. The Court notes that Plaintiff does not contest that the Act abolishes tort liability in this context and that the proper party under the Act is Defendant Westfield. As Plaintiff seeks to amend Count II, to allege "intentionally caused damage," the Court addresses Count II in Section C, *infra*.

     3.      Statute of Limitations

Defendants next argue that the claim against Defendant Westfield Insurance Company should be dismissed because Plaintiff failed to file this action within one year of the November 2013 accident and it is therefore barred by the one-year statute of limitations. *See* MICH. COMP. LAWS § 500.3145(2).

Plaintiff does not dispute that under the Act claims against no-fault insurers to recover for property damage caused by an insured motor vehicle must be filed within one year of the date of the accident. MICH. COMP. LAWS § 500.3145(2) ("An action for recovery of property protection insurance benefits shall not be commenced later than 1 year after the accident."). Plaintiff's complaint was filed more than one year after the date of the accident on May 1, 2015. Further, it is undisputed that Michigan courts do not allow for judicial equitable tolling. *Secura Ins. Co. v.*

*Auto-Owners Ins. Co.*, 461 Mich. 382 (2000)[2]; *DTE Elec. Co. v. Theut Prods., Inc*., No. 322701, 2015 WL 5707165, at * 4 (Mich. Ct. App., Sept. 29, 2015) (acknowledging that "MCL 500.3145(2) is no longer subject to judicial tolling" pursuant to *Secura* wherein the "Michigan Supreme Court clarified that a property protection insurance claim under MCL 500.3145(2) is not subject to judicial tolling.").

Plaintiff argues that its claim against Defendant Westfield should not be dismissed based on its failure to file this action within the one-year statute of limitations because Defendant Westfield waived the one-year statute of limitations by mailing a partial payment to Plaintiff in the amount of $91,813.90 after the statute of limitations had run.  (Compl. ¶ 61; Pl.'s Resp. at 15).

Michigan courts have consistently found that an insurer's conduct prior to the statute of limitations deadline does not constitute a waiver of the statute of limitations or entitle the plaintiff to equitable estoppel unless there was "(1) a false representation or concealment of a material fact, (2) an expectation that the other party will rely on the misconduct, and (3) knowledge of the actual facts on the part of the representing or concealing party." *Cincinnati Ins. Co. v. Citizens Ins. Co.*, 454 Mich. 263, (1997); *see Fed. Mut. Ins. Co. v. Empire Fire & Marine Ins. Co.*, No. 264552, 2006 WL 73757, *2 (Mich. Ct. App. Jan. 12, 2006) (stating that an insurer's admission of liability and partial payment prior to the statute of limitations deadline would not deprive the insurer of the defense of the statute of limitations, and holding that where

---

[2] *Secura* abrogates the holding in *Norfolk & Western Railway*, (issued some ten years prior) where the United States Court of Appeals for the Sixth Circuit concluded that in certain circumstances not "explicitly determined by the Supreme Court of Michigan" "the one-year limitation on actions for property damage may be judicially tolled."  *Norfolk & Western Ry. Co. v. Auto Club Ins. Ass'n*., 894 F.2d 838, 843 (6th Cir. 1990).

the plaintiff had delayed its own claim it was appropriate to allow the insurer to invoke the statute of limitations.); *see also Dep't of Transp. v. Landstar Ligon, Inc*., No. 250744, 2004 WL 1752983, at *2 (Mich. Ct. App. Aug. 5, 2004) (rejecting the argument that "Landstar waived its statute of limitations defense by lulling plaintiff into postponing the filing of its complaint until after the statute had run" because of lack of evidence and also because at no time prior to the limitations period passing did Landstar "insinuate that it would settle if plaintiff postponed filing the action. Nor did it say that it would settle regardless of the expiration of the limitations period or otherwise waive the defense.").

In the present action, Plaintiff does not allege that Defendant Westfield made any misrepresentation or concealed any facts. Rather, Plaintiff argues that after the statute of limitation had expired, Defendant Westfield mailed it a check for part of its damages but canceled the check before it was negotiated. (Compl. at ¶¶ 61, 63). Plaintiff claims that this constituted a partial payment on the obligation or demand that in turn constituted a waiver of the statute of limitations defense by Defendant Westfield. Under Michigan law a "'[w]aiver is the intentional relinquishment of a known right' that 'may be shown by express declarations or by declarations that manifest the parties' intent and purpose.'" *Reed Estate v. Reed*, 293 Mich. App. 168, 176; 810 N.W.2d 284 (2011) (citation omitted). "To effectuate a valid waiver, 'no magic language' need be used. 'Rather ... a waiver must simply be explicit, voluntary, and made in good faith.'" *Id*. (citations omitted). The test to determine whether a waiver has been made is whether a "reasonable person would have understood that he or she was waiving the interest in question." *Id*. An "implied waiver" is evidenced "by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Id*. at 177 (citation omitted).

18

In the present action, Plaintiff argues Michigan courts have recognized that payments towards a debt or obligation after the expiration of the statute of limitations as evidence of a waiver of that defense. *See Yeiter v. Knights of St. Casimir Aid. Soc'y*, 461 Mich. 493, 497-99 (2000). Plaintiff reasons that Defendant Westfield's partial payment constitutes such a waiver and its claims should not be dismissed.

The Court rejects Plaintiff's argument. While it may be true that a payment towards a debt or obligation could constitute a waiver under Michigan law, here, Plaintiff's complaint clearly alleges that *no payment was ever made by Defendant Westfield*. (Compl. ¶ 64). Indeed, it is uncontroverted that Defendant Westfield canceled the partial payment before the check was negotiated. Plaintiff has cited no case law where a canceled partial payment evidenced a waiver of a statute of limitations defense. This is likely because such conduct could not evidence a party's "unequivocal conduct reasonably inferring" an intent to waive such a defense, nor would it evidence an "explicit, voluntary" or good faith waiver.

Accordingly, the Court finds that Plaintiff's claim pursuant to the Act asserted against Defendant Westfield is barred by the applicable one-year statute of limitations.

B.      Sur-Reply

On October 21, 2015, without leave of this Court, Defendants filed a Sur-Reply to Plaintiff's Motion to Amend and Supplemental Brief in support of the Response to the Motion to Dismiss (ECF No. 23). Thereafter, Plaintiff filed a motion to strike the Sur-Reply. (ECF No. 23). The Court will grant Plaintiff's motion to strike, as Defendants themselves acknowledged that they did not have permission to file a supplemental brief. (*See* ECF No. 25).

19

Defendants have also filed a motion for leave to file a sur-reply in response to Plaintiff's reply (ECF No. 22) arguing that Plaintiff raised two new arguments in its Reply which had not been previously asserted in its Motion to Amend.  The Court finds there is not good cause for the additional briefing and will deny Defendants' motion for leave to file a sur-reply.  (ECF No. 25).

C.      Motion to Amend

As examined *supra*, the Act "provides benefits to victims of motor vehicle accidents without regard to 'fault' (as a substitution for tort remedies which, are in part, abolished)." *Shavers*, 402 Mich. at 579.  Accordingly, "[t]he no-fault act ... abrogates tort liability arising from the use, ownership, or maintenance of motor vehicles except under specified circumstances." *Travelers*, 235 Mich. App. at 275.  In other words, the Act requires that all vehicle owners maintain insurance against accidental property damage to tangible property caused by their vehicle, Mich. Comp. Laws § 500.3101(1), while also greatly limiting liability for property damage.  MICH. COMP. LAWS § 500.3135(3).

Yet, as noted, there are narrow instances in which tort liability survives under the Act; for example when there is a death, serious impairment of body function, or permanent serious disfigurement.  MICH. COMP. LAWS § 500.3135(1), (3).  Additionally, and pertinent to this action, tort liability also survives "when the tortfeasor ha[s] intentionally caused harm." *Am. Alternative Ins. Co., Inc. v. Farmers Ins. Exchange*, 470 Mich. 28 (2013); Mich. Comp. Laws § 500.3135(3)(a).  The Act provides:

> (3)    Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle .... is abolished except as to:
>
>> (a)    Intentionally caused harm to persons or property.  Even though a person knows that harm to persons or property is substantially

20

> certain to be caused by his or her act or omission, the person does not cause or suffer that harm intentionally if he or she acts or refrains from acting for the purpose of averting injury to any person, including himself or herself, or for the purpose of averting damage to tangible property.

MICH. COMP. LAWS § 500.3135(3)(a).

After the hearing on Defendants' motion to dismiss, Plaintiff filed the motion to amend its Complaint to "more accurately reflect its alternative position that the tractor-trailer driver acted intentionally when he disregarded the railroad warning systems and intended to cause the damage to CSX's property."[3] (ECF No. 20, Pl.'s Br. at 5). More specifically, Plaintiff seeks to amend its previous claim of "gross negligence" against all defendants to a claim of "intentionally caused damage" against all defendants, *i.e.* the above mentioned exception to immunity from tort liability established pursuant to the Act. Plaintiff bases this new claim on allegations that LaPointe "intended to cause the collision between the LBSFT Truck and the Northbound Train and the resulting damage sustained by CSX." (Pl.'s Br., Ex. A, Proposed Am. Compl. at ¶ 43). Plaintiff also notes that it does not intend by its amendment to waive its other previously asserted arguments or claims regarding its position that the Act is preempted by federal law or its waiver argument. Indeed, the Court notes that Counts I and III of the Proposed Amended Complaint are identical to Counts I and III of the Original Complaint. Plaintiff also asserts that Defendants will not be prejudiced by the requested amendment as this case is still at the pleading stage and no discovery has yet begun.

---

[3] Plaintiff referenced the possibility of this claim during oral argument, noting that Mich. Comp. Laws § 500.3135 excludes intentional acts from the Act and observing that its complaint should have been drafted to include such a claim.

21

Defendants argue that Plaintiff's motion to amend is an attempt to end-around the one-year statute of limitations of the Act and acknowledge that claims asserting intentionally caused harm to persons or property "remain subject to Michigan's tort law and a three-year statute of limitations." (ECF No. 21, Defs.' Resp. at 4). Defendants argue that Plaintiff's motion to amend must be denied because its proposed amendment is futile as it has only pleaded facts that support that LaPointe's actions were intentional not that he intended to cause damage to CSX's property as required by the statute.

The Michigan Supreme Court addressed the intentional harm exception to the Act in the context of a property damage action in *American Alternative Insurance Company v. Farmers Insurance Exchange*, 470 Mich. 28 (2004). In *American Alternative*, the defendant ("York") had been drinking for six or seven hours before deciding to drive himself home. On his way home, defendant York failed to stop at a stop sign and hit an ambulance owned by a company insured by the plaintiff. *Id*. The plaintiff insurance company, after paying $61,000 for damage to the ambulance, sued defendant York seeking reimbursement. *Id*. Defendant York argued that pursuant to the Act he was immune from tort liability. *Id*. at 30. The trial court held that defendant York's conduct was "wilful and wanton" and therefore equivalent to intentional conduct, an exemption to the Act. *Id*. Ultimately, the Michigan Supreme Court rejected arguments based on whether the defendant's actions were "wilful and wanton" and whether such conduct was the equivalent of "intentional conduct," and held:

> [t]he Legislature, in speaking so clearly in § 3135(3), made unmistakable its intent to define where immunity was lost. As set out in the statute, the test is: was the harm intentionally caused. The statute makes no reference to "wilful and wanton." Accordingly, in analyzing § 3135(3)(a), the courts are to review only whether the defendant intended to cause the harm that resulted.

*Id*. at 32, n. 2 (citing with approval the test for intent in *Hicks v. Vaught*, 162 Mich. App. 438, 440 (Mich. Ct. App. 1987)).  The Michigan Supreme Court then concluded that while there was evidence that the defendant was intoxicated there was no evidence "to support a finding that he actually intended to collide with the ambulance and cause damage to it."  *Id*. at 32-33. Accordingly, the court held that because the defendant did not intend to cause harm to the ambulance he was immune from suit under the Act.

Plaintiff's proposed Amended Complaint alleges that LaPointe "deliberately ignored the signals, gates and warnings posted at the Crossing when he drove the LBSFT Truck onto the CSX right-of-way" and "[b]y driving the LBSFT Truck into the Crossing, [LaPointe] intended to cause the collision between the LBSFT Truck and the Northbound Train and the resulting damage sustained by CSX."  (Proposed Am. Comp. ¶¶ 43-44).  Defendants argue that this allegation falls short of an allegation that LaPointe intended to cause harm to Plaintiff's train because it is merely an allegation that LaPointe committed intentional acts.

The Court finds that while Plaintiff may be unable to carry its ultimate burden in evidencing that LaPointe intended to cause harm to its train, this action is only at the pleadings stage and discovery has yet to be conducted.  (*See* ECF No. 22, Pl.'s Reply at 3, "CSX has a reasonable belief that it will ultimately carry the burden of proving the state of mind of LaPointe when he drove a tractor-trailer onto an active railroad track while the railroad warning signals were engaged....").  Defendants' argument of futility is premised on a very fine line: Plaintiff's inability to "plead" that LaPointe intended *the harm* he caused by driving onto the railroad tracks. Yet, Plaintiff's complaint unequivocally states that LaPointe "intended to cause the collision...and the resulting damage sustained by CSX."  (*Id*. at ¶ 44).

23

Defendants further contend that there is no "factual basis" to support the allegation that LaPointe intended the harm he caused. However, Defendants fail to acknowledge that any such facts regarding LaPointe's state of mind would be peculiarly within the possession of LaPointe and unavailable to Plaintiff prior to discovery. Accordingly, such an argument is not persuasive.

Michigan law is clear that to succeed on an intentional harm claim a plaintiff must show that the tortfeasor intended to cause the harm – not merely that his or her actions were intentional. *See Hicks*, 162 Mich. App. at 440 (holding that the Act "unambiguously requires a person to intend to cause harm to a person or property and not merely, as plaintiff contends, intends to do the act which cases the harm."). Michigan law is less clear regarding what facts suffice to support such a claim at the pleadings stage. In most case law regarding this issue, the claim was disposed of after the plaintiff failed to *evidence* the requisite intent. *See e.g.*, *American Alternative*, 470 Mich. at 32-33 (finding evidence showing the tortfeasor was intoxicated while driving was not enough to show that he intended to hit and cause damage to an ambulance.); *Chandanais v. Wilson*, No. 300933, 2011 WL 5604649, *2 (Mich. Ct. App. Nov. 17, 2011) (affirming trial court's decision that there was "no evidence to support the contention that defendant intentionally caused harm to plaintiff" based on plaintiff's deposition testimony.).

There are three opinions regarding the intentional harm exception to the Act that granted a dismissal at the pleading stage. In *Silva v. CH2M Hill Inc*., No. 307699, 2013 WL 5629768, *1 (Mich. Ct. App. Oct. 15, 2013), the plaintiff property owners filed suit against truckers, their employers, and other contractors for negligence after the truckers negligently hauled sediment and failed to prevent chemical waste from spilling onto the streets. The trial court concluded that the Act applied and because the plaintiffs failed to plead any exceptions the Act, the

24

plaintiffs had failed to state a claim.  *Id*. at *2.  The Michigan Court of Appeals affirmed the lower court's decision and held that the "No-Fault Act provides its own strict test for intentional conduct, which requires that the actor both intend to cause the act and intend that the act cause harm" and found that the plaintiff "failed to plead or provide any facts that would indicate that the truckers *intended to* cause damage to their property." (emphasis in original).

In *Swiderski v. Comcast Cablevision of Shelby*, No. 227194, 2002 WL 1275642 (Mich. Ct. App. June 2, 2002) the Michigan Supreme Court affirmed a trial court's dismissal of the case based on the statute of limitations.  In *Swiderski*, the defendant's employees had driven their large truck across the plaintiff's rain-soaked property which caused extensive damage to its septic system.  The plaintiff filed a trespass claim against the defendant and the defendant argued the Act applied and the statute of limitations barred the claim.  The Michigan Court of Appeals affirmed the lower court's dismissal finding that plaintiff's claim for an "intentional tort" did not suffice; "[w]hile we agree that plaintiff may have sufficiently plead an intentional tort, we find that the exception provided by § 3135(3)(a) is not for intentional torts but for intentionally caused harm....While the plaintiff is entitled to at least nominal or general damages which are presumed to follow from the trespass...that does not mean that the injuries for which those damages are assessed are presumed to have been intended." *Id*. at * 3. (internal citation omitted).

In *Hicks*, in a very succinct opinion lacking details or background facts, the Michigan Court of Appeals affirmed a trial court's grant of summary disposition to a defendant based on the plaintiff's failure to show a threshold injury and then denied the plaintiff's later request to amend her complaint to allege intentionally caused harm.  *Hicks*, 162 Mich. App. at 439.  The

*Hicks* court held that the Act required that "a person intend to cause harm to a person or property and not merely, as plaintiff contends, intend to do the act which causes the harm." *Id*. at 440. The court then summarily concluded that "plaintiff failed to plead any facts which show that defendant intended to cause harm to plaintiff." *Id.* at 440.

All of these cases are distinguishable from the present action. In the instant case, unlike *Hicks*, the Plaintiff's proposed amendment clearly sets forth both that LaPointe intended to drive on to the train tracks, that LaPointe intended to cause a collision with a train and "the resulting damage." Additionally, unlike *Silva* or *Swiderski*, Plaintiff's proposed amended complaint also clearly pleads the intentional harm exception to the Act.

In short, Defendants' arguments are directed at Plaintiff's likelihood of eventually carrying its evidentiary burden rather than whether Plaintiff's proposed amended complaint has "offered sufficient factual allegations that make the asserted claim plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, where Plaintiff has set forth facts that, taken in a light most favorable to it, create a plausible claim of intentionally caused harm, Plaintiff has alleged a plausible claim that is an exception to the Act.

Accordingly, the Court will grant Plaintiff's Motion to Amend as to Count II. The Court further finds that Counts I and III of the Proposed Amended Complaint are dismissed for the reasons set forth, *supra*, in its analysis of Defendants' motion to dismiss.

D.      Proper Parties

Defendants also argue that if the Court allows Plaintiff to amend its complaint, the amended Count II would not adequately state a claim against Defendants LBSFT, Craig and Dorothy Benore because those defendants are not alleged to have "intentionally caused harm."

26

This argument is without merit.  Plaintiff's amended claim of intentional harm is plead as an exception to the Act, and as such, traditional tort law would apply including the principles of respondeat superior or vicarious liability.  Plaintiff alleges such liability in Count II noting that LaPointe was acting within the scope of his employment when the event occurred and alleging that Defendants LBSFT, Craig and Dorothy Benore are the owners and/or employers of LaPointe and therefore are liable for the damage caused by LaPointe's operation of the truck.  (Proposed Am. Compl. ¶¶ 43-52).  Defendants' argument that vicarious liability or liability based on respondeat superior is abrogated in a situation in which the Act does not apply is without any support in case law.[4]  Indeed, the language of the Act makes clear that tort law is abolished *except* when the harm to the property was intentional.  *See* MICH. COMP. LAWS § 500.3135(3)(a).

In summary, the Court notes that only Count II in the proposed Amended Complaint will survive against Defendants LaPointe, the Benores, and LBSFT, and Defendant Westfield will be terminated as a defendant in this action in accordance with the dismissal of Count III.[5]

---

[4] Interestingly, this truth is born out in a case cited and relied upon by Defendants.  In the *Silva* case, the truckers who were accused of negligence were defendants to the negligence action as was their employer, Fred Best Excavating, who filed an appellate brief on the matter.  Additionally, it was noted in the defendant employer's briefing that the truckers had the proper insurance in effect as required by Mich. Comp. Laws § 500.3101, as maintained by Fred Best Excavating, a policy carried with Westfield Insurance.  *See* Fred Best's Appellate Brief, No. 307689, 2012 WL 9436120, at *11 (Mich. App. Appellate Br., Apr. 23, 2012).  This case illustrates that where a claim ostensibly falls outside the Act, the plaintiff proceeds with that claim *outside* the Act and common law, including respondeat superior or vicarious liability, would apply.

[5] In Michigan, where an injured party asserts a direct or original action against a party the liability insurance carrier is not a proper party to the action.  *See* MICH. COMP. LAWS § 500.3030 ("In the original action brought by the injured person... the insurer shall not be made or joined as a party defendant ....").  Plaintiff acknowledged as much in during its oral argument and its previous briefing, noting that to the extent that the Act did not apply the correct defendants would be the individual insureds rather than the insurance company.

27

IV. CONCLUSION

For all the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss as to Counts I and III (ECF No. 10).  Further, the Court GRANTS Plaintiff's Motion to Strike (ECF No. 24) and DENIES Defendant's Motion for Leave to file a Sur-Reply (ECF No. 25).  Finally, the Court GRANTS Plaintiff's Motion to Amend as to Count II (ECF No. 20).

IT IS SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  December 30, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 30, 2015.


s/Deborah Tofil
Case Manager

28